IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 7 |
| THUONG NGOC NHAN and ) | |
| XUYEN THI NGUYEN, ) | |
| ) | CASE NO.: 13-59273-mhm |
| Debtors. ) | |
| -------------------------------------------------------------- ) | |
| ) | |
| STATE BANK AND TRUST, ) | |
| ) | |
| Movant, ) | |
| v. ) | |
| ) | CONTESTED MATTER |
| THUONG NGOC NHAN, XUYEN THI ) | |
| NGUYEN, and JANET G. WATTS, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that State Bank and Trust (the "*Movant*") has filed its *Motion for Relief from the Automatic Stay* (the "*Motion*") and related papers with the Court seeking an order granting Movant relief from the automatic stay so that it can exercise its rights and remedies available to it under the loan documents and state law including, without limitation, foreclosure sale with respect to certain real property located in Clayton County, Georgia.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion at **2:15 p.m.** on **June 4, 2013**, in Courtroom 1204, Richard B. Russell Federal Building, 75 Spring Street, Atlanta, Georgia.

PLEASE TAKE FURTHER NOTICE that your rights may be affected by the Court's ruling on the Motion. You should read the Motion carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) If you do not want

the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the matter, then you or your attorney must attend the hearing. You may also file a written response to the Motion with the Clerk at the address stated below, but you are not required to do so. If you file a written response, it must be mailed or delivered so that it is received by the Clerk at least two (2) business days before the hearing, and you must attach a certificate stating when, how and on whom (including addresses) you served the response. The address of the Clerk's office is: Clerk of the United States Bankruptcy Court for the Northern District of Georgia, 75 Spring Street, Room 1340, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the stay remaining in place until the Court orders otherwise.

Dated: May 14, 2013.

BUSCH, SLIPAKOFF & SCHUH, LLP


/s/ Mathew A. Schuh
Mathew A. Schuh
Georgia Bar No.: 630253
*Counsel for State Bank and Trust*

3330 Cumberland Boulevard
Suite 300
Atlanta, Georgia 30339
(770) 790-3550
m.schuh@bssfirm.com

2

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 7 |
| THUONG NGOC NHAN and ) | |
| XUYEN THI NGUYEN, ) | |
| ) | CASE NO.: 13-59273-mhm |
| Debtors. ) | |
| ------------------------------------------------------------ ) | |
| ) | |
| STATE BANK AND TRUST, ) | |
| ) | |
| Movant, ) | |
| v. ) | |
| ) | CONTESTED MATTER |
| THUONG NGOC NHAN, XUYEN THI ) | |
| NGUYEN, and JANET G. WATTS, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND
## WAIVER OF FED. R. BANK. P. 4001(a)(3)

COMES NOW, STATE BANK AND TRUST, as assignee of the Federal Deposit

Insurance Corporation in receivership of United Americas Bank (the "Movant"), by and through

its undersigned counsel, and pursuant to FED. R. BANK. P. 4001 and 9014, and 11 U.S.C. §

362(d), and requests relief from the automatic stay provided by 11 U.S.C. § 362(a), and states as

follows:

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334,

and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The relief requested herein may be granted in accordance with the provisions of Sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4. On April 29, 2013, Debtors filed a voluntary Chapter 7 petition in the instant case [Doc. 1].

### *235 Spearman Road Roopville Carroll County*

5. On or about November 13, 2008, the Debtors executed and delivered a promissory note in favor of the Bank in the original principal amount of $250,000.00 (the "Note").

6. The Note is secured by that certain Deed to Secure Debt and Assignment of Rents dated November 13, 2008, filed and recorded November 25, 2008, in Deed Book 09559, Page 677, Clayton County, Georgia Records (the "Deed") (the Deed, together with the Note, are sometimes referred to herein as the "Loan Documents"). A true and correct copy of the Deed is attached hereto as Exhibit "1".

7. The Deed grants the Bank a first priority security interest in certain real property commonly known as 5304 and 5312 Main Street (Hwy 54) Lake City, Georgia, as more fully described in the Deed (the "Property").

8. The Note went into default because: 1) Debtors bankruptcy filing; 2) Debtors defaulted on an unsecured line of credit with the Bank which is cross defaulted and cross collateralized with the Note; and 3) Debtors personally guaranteed a corporate debt which is in default and is also cross defaulted and cross collateralized with the Note.

4

## ARGUMENT AND CITATION OF AUTHORITY

9. By this Motion, the Bank requests that the Court grant it relief from the automatic stay to exercise its rights under the loan documents and state law including, without limitation, the right to foreclose on the Property and to confirm any foreclosure sale. In this case, the Bank should be granted relief from the automatic stay because: (i) the Debtors have no equity in the Property; and (ii) the Debtors filed for relief fund under Chapter 7 of the Bankruptcy Code and therefore a reorganization is not in prospect.

### The Automatic Stay Should Be Lifted Under § 362(d)(2) Because The Debtor Has No Equity In The Property

10. The Bank should be granted relief from the automatic stay under Section 362(d)(2) of the Bankruptcy Code. Pursuant to Section 362(d)(2) of the Bankruptcy Code, the Court shall grant a party relief from the automatic stay with respect to a stay of an act against property if (i) the debtor does not have any equity in such property. See 11 U.S.C. § 362(d)(2).

11. Pursuant to the loan documents, the Bank has a claim against the Debtor's estate in the amount of not less than $3,000,000.00, plus applicable interest, attorneys' fees, and penalties continuing to accrue, all of which is secured by the properties. Upon information and belief and as set forth in the Debtors' schedules, the value of the Property is substantially less than the amount of the secured debt and therefore there is no equity.

### The Debtor Cannot Demonstrate that the Property is Necessary for an Effective Reorganization in Prospect

12. Once lack of equity in the property is established, the burden shifts to the debtor to demonstrate that the property is necessary to an effective reorganization. See, e.g., Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1313 (5th Cir. 1985). On this issue, the debtor's burden is not merely to demonstrate that it is conceivable to reorganize, rather, the

5

debtor must demonstrate that the property is "essential for an effective reorganization that is in prospect." See U.S. Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988) (to prevail against the movant, the debtor must do more than show high hopes; it must be able to show a reasonable prospect for a successful reorganization within a reasonable time). The reorganization must be realistically possible, and the mere fact that the property might be indispensable to the debtor's survival is insufficient. See In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 370-71 (5th Cir. 1987) (en banc), aff'd, 484 U.S. 365 (1988); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984).

13. The Debtors are in default under the Loan Documents and have filed a Chapter 7 liquidation therefore it is improbable that the Debtors will propose an effective, confirmable plan of reorganization.

14. Since there is no equity in the Property and the Debtors are unable to carry their burden as to a plan, the Bank should be given the opportunity to protect its interest in its collateral, and relief from the automatic stay must be granted. See In re Richardson Group, Inc., 107 B.R. 353, 356 (Bankr. M.D. Fla. 1989); In re Endrex Exploration Co., 101 B.R. 474, 476 (N.D. Tex. 1988). Accordingly, the Bank requests that the Court lift the automatic stay to allow, inter alia, the Bank to foreclose on the Property.

### Immediate Relief from the Automatic Stay is Appropriate

15. Under the instant circumstances, the Bank further requests that the Court grant relief from the stay and waive the fourteen-day waiting period imposed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure thereby granting relief from the automatic stay to become effective immediately.

WHEREFORE, the Bank respectfully requests that the Court enter an Order:

1.    Lifting the automatic stay to allow the Bank to exercise its rights and remedies under the loan documents and Georgia law, including, without limitation, the right to foreclose on the real property and  to confirm any foreclosure sale under O.C.G.A. §44-14-161;

2.    Waiving the fourteen-day waiting period imposed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and

3.    Granting such other relief as is appropriate.

Respectfully submitted, this 14th day of May,  2013.

**BUSCH, SLIPAKOFF & SCHUH, LLP**

/s/ Mathew A. Schuh
Mathew A. Schuh
Georgia Bar No.: 630253
*Counsel for State Bank and Trust*

3330 Cumberland Boulevard
Suite 300
Atlanta, Georgia 30339
(770) 790-3550
m.schuh@bssfirm.com

7

09559
00677

GEORGIA INTANGIBLE TAX PAID
$   150.00
11-25-08

FILED
CLAYTON CO., GA

2008 NOV 25 AM 9:

LINDA T. MILLER
CLERK SUPERIOR CO

After recording return to:
REDMOND LAW, LLC.
3515 PIEDMONT ROAD, STE 1020
15 PIEDMONT CENTER ATLANTA, GA 30305
File # C0801293

FILED
CLAYTON CO., GA

2008 NOV 25 AM 9: 31

T. Miller

FACE CLERK
CLAYTON COUNTY
MATURITY DATE

$250,000.00
$750.00
November 13th, 2013

LINDA T. MILLER
CLERK SUPERIOR COURT

### DEED TO SECURE DEBT AND ASSIGNMENT OF RENTS

This DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (hereinafter referred to as this "Security Instrument") is made and entered into as of the 11/13/08 by and between XUYEN NGUYEN and HANG N. NHAN, party of the first part, as grantor (hereinafter collectively referred to as "Grantor"), whose address is 5403 JONESBORO ROAD, LAKE CITY, GA 30260, and UNITED AMERICAS BANK NA, party of the second part, as grantee (hereinafter, together with its successors and assigns, referred to as "Grantee"), whose address is 3789 ROSWELL ROAD, ATLANTA, GA 30342.

### WITNESSETH:

THAT FOR AND IN CONSIDERATION of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer, pledge and set over unto Grantee and the successors, successors-in-title and assigns of Grantee all of the following described land and interests in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter referred to collectively as the "Property"):

(a)     All those certain tracts or parcels of land being more particularly described on EXHIBIT "A" attached hereto and by this reference made a part hereof (hereinafter collectively referred to as the "Land").

(b)     All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles (excluding Grantor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever, now or hereafter owned by Grantor and located in, on or about or used or intended to be used with or in connection with the use, operation or enjoyment of the Property (including any furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property that Grantor stores off of the Land), including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Grantor in and to any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor or on behalf of Grantor, all tradenames, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof, now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Property and between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Instrument. The location of the above described collateral is also the location of the Land.

(c)     All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on, under or above the Land or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

Page 1 of 20
Deed to Secure Debt and Assignment of Rents Rider

(d)      All income, rents, issues, profits and revenues of the Property from time to time accruing (including without limitation all payments under leases or tenancies, proceeds or insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor of, in and to the same; reserving only the right to Grantor to collect the same so long as Grantor is not in default hereunder.

TOGETHER WITH all and any unexpired warranties, guarantees, and indemnities with respect to any or all of the foregoing.

TOGETHER WITH the proceeds of all of the foregoing.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Grantee and the successors and assigns of Grantee, IN FEE SIMPLE forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same are unencumbered except for those matters (hereinafter collectively referred to as the "Permitted Exceptions") expressly set forth in **EXHIBIT "B"** attached hereto and by this reference made a part hereof, and that Grantor does hereby warrant and will forever defend the title thereto against the claims of all persons whomsoever, except as to the Permitted Exceptions.

This Security Instrument is intended to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "Indebtedness");

(a)      The debt evidenced by that certain UNITED AMERICAS BANK NA REAL ESTATE NOTE (hereinafter referred to as the "Note"), dated of even date herewith, made by Grantor to the order of Grantee in the principal face amount of up to Two Hundred Fifty Thousand and 00/100 ($250,000.00) with the final payment being due on or before November 13th, 2013, together with any and all extensions, revisions, amendments, modifications, restatements and/or renewals thereof of the indebtedness evidenced by the Note;

(b)      Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby on the Property, or for taxes, assessments or insurance premiums, as hereinafter provided, or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances);

(c)      Any and all other obligations and indebtedness owing by Borrower to Lender now existing or hereafter coming into existence and relating to the indebtedness arising under the Note and any modification or renewals thereof (the "Loan"), including, without limitation, any and all obligations of Borrower to Lender arising from, by reason of, or in any way relating to any of the Loan Documents or any loan agreement, security agreement, security deed, security instrument or promissory note relating to the Loan or hereafter executed by Borrower (whether alone or together with another or others) in favor of Lender or any loan or advance by Lender to Borrower under or in connection with any of the foregoing and any other indebtedness relating to the Loan hereafter owing by Borrower to Lender, however evidenced or created, whether direct, indirect or by way of assignment, whether joint or several, absolute or contingent, due or to become due and any and all extensions, revisions, amendments, modifications, restatements and/or renewals thereof, in whole or in part, of any of the foregoing.

(d)      All amounts payable by and obligations of Grantor under and pursuant to that certain Loan Agreement of even date herewith between Grantor and Grantee (hereinafter together with any amendments, modifications, supplements and/or restatements thereto referred to as the "Loan Agreement").

IT IS THE INTENTION AND AGREEMENT OF GRANTOR AND GRANTEE TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY INSTRUMENT PURSUANT TO O.C.G.A. SECTION 44-14-80(a) AND GRANTOR AND GRANTEE FURTHER ACKNOWLEDGE AND AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF TWENTY (20) YEARS FROM THE DATE OF THIS SECURITY INSTRUMENT. NOTWITHSTANDING THE FOREGOING SENTENCE OF THIS PARAGRAPH, NOTHING IN THIS PARAGRAPH SHALL IMPAIR, RESTRICT, DIMINISH OR WAIVE ANY OF LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS SECURITY INSTRUMENT.

Should the Indebtedness secured by this Security Instrument be paid according to the tenor and effect thereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Security Instrument shall be cancelled and surrendered.

Page 2 of 20
Deed to Secure Debt and Assignment of Rents Rider

Grantor hereby further covenants and agrees with Grantee as follows:

<b>ARTICLE I</b>

1.01   <u>Payment of Indebtedness.</u>   Grantor shall pay the Note according to the tenor thereof and the remainder of the Indebtedness promptly as the same shall become due.

1.02   <u>Taxes, Liens and Other Charges.</u>

(a)   Grantor shall pay, on or before the due date thereof, all taxes, assessments, levies, license fees, permit fees and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen (of every character whatsoever (including all penalties and interest thereon), now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon, the Property, or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and shall submit to Grantee such evidence of the due and punctual payment of all such taxes, assessments and other fees and charges as Grantee may require.

(b)   Grantor shall pay, on or before the due date thereof, all taxes, assessments, charges, expenses, costs and fees which may now or hereafter be levied upon, or assessed or charged against, or incurred in connection with, the Note, the other Indebtedness, this Security Instrument or any other instrument now or hereafter evidencing, securing or otherwise relating to t he Indebtedness, and shall submit to Grantee such evidence of the due and punctual payment of all such taxes, assessments, charges, expenses, costs and fees as Grantee may require.

(c)   Grantor shall pay, on or before the due date thereof, (i) all premiums on policies of insurance covering, affecting or relating to the Property, as required pursuant to Paragraph 1.03; (ii) all premiums on life insurance policies, if any, collaterally assigned or to be collaterally assigned to Grantee; and (iii) all ground rentals, other lease rentals and other sums, if any, owing by Grantor and becoming due under any lease or rental contract affecting the Property.  Grantor shall submit to Grantee such evidence of the due and punctual payment of all such premiums, rentals and other sums as Grantee may require.

(d)   In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of deeds to secure debt or security agreements or debts secured thereby or the manner of collecting such taxes so as to adversely affect Grantee, Grantor will pay any such tax on or before the due date thereof.  If Grantor fails to make such prompt payment or if, in the opinion of Grantee, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment or if, in the opinion of Grantee, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the Indebtedness and all interest accrued thereon shall, at the option of Grantee, become immediately due and payable.

(e)   Grantor will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be filed of record or to remain outstanding against the Property unbonded or undischarged for a period of thirty (30) days after the date of filing thereof or ten (10) days after Grantor receives notice thereof, whichever time period ends the earlier.

1.03   <u>Insurance.</u>

(a)   Grantor shall procure for, deliver to and maintain for the benefit of Grantee during the term of this Security Instrument, such insurance policies and evidence thereof as is required under the Loan Agreement, or as otherwise reasonably required or requested by Grantee.

(b)   Grantor shall also obtain and carry, or cause to be obtained and carried, such other insurance on the Property or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required or requested by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor.

(c)   In the event Grantor shall fail to maintain the full insurance coverages required hereunder or shall fail to keep the Property in good repair and operating condition, Grantee may (but shall be under no obligation to) take out the required policies of insurance and pay the premiums on the same or may make such repairs or replacements as are necessary and provide for payment thereof; and all amounts so advanced therefor by Grantee shall become an additional obligation of Grantor to Grantee and shall be secured hereby.

Page 3 of 20<br>Deed to Secure Debt and Assignment of Rents Rider

(d)     Grantee is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor and Grantee jointly. In the event that any insurance company fails to disburse directly and solely to Grantee but disburses instead either solely to Grantor or to Grantor and Grantee jointly, Grantor agrees immediately to endorse and transfer such proceeds to Grantee. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Grantee may execute such endorsements or transfers for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Grantee may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Indebtedness, whether or not due and in whatever order Grantee elects, (ii) to the repair and/or restoration of the Property, and/or (iii) for any other purposes or objects for which Grantee is entitled to advance funds under this Security Instrument, all without affecting the security title or security interest created by this Security Instrument; and any balance of such monies then remaining shall be paid to Grantor or the person or entity lawfully entitled thereto; provided, however, that if requested in writing by Grantor and if no "Event of Default" (as hereinafter defined) and no event, occurrence or condition, which with notice or the passage of time or both would constitute such a "Event of Default", shall have occurred and be continuing, Grantee shall make available to Grantor said net proceeds for repair and/or restoration of the Property, through an escrow account controlled by Grantee, but said net proceeds shall be disbursed from said escrow account by Grantee only as repair and/or restoration progresses and only as is consistent with prudent practices of a lender. Grantee shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

(e)     At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this Paragraph 1.03, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee. Grantor shall deliver to Grantee receipts evidencing the payment for all such insurance policies and renewals or replacements. The delivery of any insurance policies hereunder shall constitute an assignment of all unearned premiums as further security hereunder. In the event of the foreclosure of this Security Instrument or any other transfer of title to the Property in extinguishment or partial extinguishment of the Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereof.

1.04     Monthly Deposits. At the option of Grantee, to secure the payment of the taxes and assessments referred to in Paragraph 1.02 and the premiums on the insurance referred to in Paragraph 1.03, Grantor shall deposit with Grantee, on the due date of each installment under the Note, such amounts as, in the estimation of Grantee, shall be equal to one-twelfth (1/12) of the annual taxes, assessments and insurance premiums on the Property; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes and assessments and insurance premiums on the Property as the same accrue and are payable. Payment from said sums for said purposes shall be made by Grantee at its discretion and may be made even though such payments will benefit subsequent owners of the Property. Said deposits shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Grantee. If said deposits are insufficient to pay the taxes and assessments and insurance premiums in full as the same become payable, Grantor will deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes and assessments and insurance premiums in full.

1.05     Condemnation. If all or any portion of the Property shall be damaged or taken through condemnation (which term when used in this Security Instrument shall include any damage or taking by any governmental or quasi-governmental authority and any transfer by private sale in lieu thereof), either temporarily or permanently, then the entire Indebtedness shall, at the option of Grantee, immediately become due and payable. Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will notify Grantee, and Grantee is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Grantee, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights or action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, and Grantee is authorized, at its option, to collect and receive all such compensation, awards or damages and to give proper receipt and acquittance therefor without any obligation to question the amount of any such compensation, awards or damages. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Grantee may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Indebtedness, whether or not due and in whatever order Grantee may elect, (ii) to the repair and/or restoration of the Property, and/or (iii) for any other purposes or objects for which Grantee is entitled to advance funds under this Security Instrument, all without affecting the security interest or title created by this Security Instrument, and any balance of such monies then remaining shall be paid to Grantor or any other person or entity lawfully entitled thereto; provided, however, that if requested in writing by Grantor and if no "Event of Default" (as hereinafter defined), and no event, occurrence, or condition which, with notice or the passage of time or both would constitute such an "Event of Default", shall have occurred and be continuing, Grantee shall make available to Grantor said net proceeds for repair and/or restoration of the Property, through an interest-bearing escrow account controlled by Grantee, but said net proceeds shall be disbursed from said escrow account by Grantee only as repair

Page 4 of 20
Deed to Secure Debt and Assignment of Rents Rider

and/or restoration progresses and only as is consistent with prudent practices of a lender. Grantor agrees to execute such further assignments of any compensation, awards, damages, claims, rights or action and proceeds as Grantee may require. If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Instrument, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent of any unpaid Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Instrument or the Note shall have been sought or recovered, and to the extent of attorneys' fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds.

1.06    Care of Property.

(a)    Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which would or could increase the risk of fire or other hazard to the Property or any part thereof or which could or would result in the cancellation of any insurance policy carried with respect to the Property.

(b)    Grantor will not remove, demolish or alter the structural character of any improvement located on the Land without the written consent of Grantee.

(c)    If the Property or any part thereof is damaged by fire or other cause, Grantor will give immediate written notice thereof to Grantee.

(d)    Grantee or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

(e)    Grantor will promptly comply with all present and future laws, statutes, acts, codes, ordinances, rules and regulations of any federal, state or local governmental authority affecting the Property or any part thereof.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor will promptly restore the Property to the equivalent of its original condition; and if a part of the Property shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Grantee. Notwithstanding the foregoing, Grantor shall not be obligated so to restore, repair or alter unless in each instance, Grantee agrees to make available to Grantor (pursuant to a procedure satisfactory to Grantee) any net insurance or condemnation proceeds actually received by Grantee hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration, repair or alteration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration, repair or alteration shall in no way relieve Grantor of its obligation to restore, repair or alter. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Grantee a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Grantee in its good faith judgment) exceeds the actual net insurance or condemnation proceeds with respect to such damage or destruction.

1.07    Leases, Contracts, Etc.

(a)    As additional collateral and further security for the Indebtedness, Grantor does hereby assign to Grantee Grantor's interest in and to all leases, tenant contracts, rental agreements, franchise agreements, management contracts, operation agreements, construction contracts, sales contracts, and other contracts, licenses and permits now or hereafter affecting the Property, or any part thereof (hereinafter collectively referred to as the "Contracts" and individually as a "Contract"), and Grantor agrees to execute and deliver to Grantee such additional instruments, in form and substance satisfactory to Grantee, as may hereafter be requested by Grantee further to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by Grantee to any Contract, or to impose upon Grantee any obligation with respect thereto. Without first obtaining on each occasion the written approval of Grantee, Grantor shall not cancel or permit the cancellation of any such Contract, or modify any, or accept or permit to be made, any prepayment of any installment of rent or fees thereunder (except for security deposits and the usual prepayments of rent which results from the acceptance by a landlord on the first day of each month of the rent for that month). Grantor shall faithfully keep and perform, or cause to be kept and performed, all of the covenants, conditions and agreements contained in each of said instruments now or hereafter existing, on the part of Grantor to be kept and performed and shall at all times do all things necessary to compel performance by each other party to said instruments of all obligations, covenants and agreements by such other party to be performed thereunder.

(b)    Grantor shall not execute an assignment of the income, rents, issues or profits, or any part thereof, from the Property unless Grantee shall first consent in writing to such assignment and unless such assignment shall expressly provide that it is

Page 5 of 20
Deed to Secure Debt and Assignment of Rents Rider

subordinate to the assignment contained in this Security Instrument and any assignment executed pursuant hereto or concerning the Indebtedness.

(c)      Each lease, tenant contract and rental agreement, if any, pertaining to the Property, or any part thereof, shall provide that, in the event of the enforcement by Grantee of the remedies provided by law or by this Security Instrument, the lessee or tenant thereunder will, upon request of Grantee or any other person or entity succeeding to the interest of Grantee as a result of such enforcement, automatically become, at the sole option and discretion of Grantee, the lessee or tenant of Grantee or said successor in interest, without change in the terms or other provisions of said lease, tenant contract or rental agreement; provided, however, that neither Grantee nor any such successor in interest shall be bound by (i) any payment of rental or additional rental for more than one (1) month in advance, except prepayments in the nature of security for the performance of said lessee or tenant of its obligations under said lease, tenant contract or rental agreement (and then only if such prepayments have been deposited with and are under the control of Grantee); or (ii) any such lease, tenant contract or rental agreement, or any amendment or modification thereto, made without the express written consent of Grantee or said successor in interest (which consent shall not be unreasonably withheld).  Each lease, tenant contract and rental agreement pertaining to the Property shall also provide that, upon request by said successor in interest, the lessee or tenant thereunder shall deliver an instrument or instruments in form and content satisfactory to Grantee confirming such attornment.

(d)      Notwithstanding any other provisions of this Security Instrument, Grantor shall not hereafter enter into any Contract affecting the Property, or any part thereof, without the prior written consent of Grantee (which consent shall not be unreasonably withheld) and except upon the following conditions: (i) each such instrument shall contain a provision that the rights of the parties thereunder are expressly subordinate to all of the rights and title of Grantee under this Security Instrument; (ii) any such instrument shall contain a provision whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Grantee may sell the Property in the manner provided in Article II, and thereby, at the option of Grantee, sell the same subject to such instrument; and (iii) at or prior to the time of execution of any such instrument, Grantor shall, as a condition to such execution, procure from the other party or parties thereto an agreement in favor of Grantee, in form and substance satisfactory to Grantee, under which such party or parties agree to be bound by the provisions of Article II, regarding the manner in which Grantee may foreclose or exercise the power of sale under this Security Instrument.

1.08      Security Agreement.  With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles referred to or described in this Security Instrument, or in any way connected with the use and enjoyment of the Property, this Security Instrument is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provisions of the Uniform Commercial Code as enacted in the State of Georgia. Grantor hereby acknowledges and affirmatively authorizes Grantee, at any time and from time to time, in Grantee's sole and absolute discretion, to file a financing statement or statements and/or any other documents or instruments reciting this Security Instrument to be a security agreement affecting all of such property in such jurisdiction or jurisdictions as Grantee shall determine and elect.  The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Security Instrument shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election.  Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein or which is described or reflected in this Security Instrument, is and at all times and for all purposes and in all proceedings, legal or equitable, shall be regarded as part of the real estate conveyed hereby regardless whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Security Instrument, or (iii) any such item is referred to or reflected in any such financing statement or statements of the rights in and to (a) the proceeds of any fire and/or hazard insurance policy, or (c) any award in eminent domain proceedings for a taking or for loss of value, or (b) Grantor's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Security Instrument or affect the priority of Grantee's security interest granted hereby or by any other recorded documents, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii), or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the Uniform Commercial Code records.

1.09      Further Assurances; After-Acquired Property.  At any time, and from time to time, upon request by Grantee, Grantor will make, execute and deliver, or cause to be made, executed and delivered, to Grantee and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by Grantee, any and all such other and further deeds to secure debt, mortgages, deeds of trust, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the opinion of Grantee, be necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve (i) the obligation of Grantor under the Note and under this Security Instrument, and (ii) the security interest created by this Security Instrument as a first and prior security interest upon

Page 6 of 20
Deed to Secure Debt and Assignment of Rents Rider

and security title in and to all of the Property, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Grantee may make, execute, record, file, re-record and/or refile any such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates and documents for and in the name of Grantor, and Grantor hereby irrevocably appoints Grantee the agent and attorney-in-fact of Grantor so to do. The security title of this Security Instrument and the security interest created hereby will automatically attach, without further act, to all after-acquired property attached to and/or used in the operation of the Property or any part thereof.

1.10    Expenses. Grantor will pay or reimburse Grantee, upon demand therefor, for all attorneys' fees in an amount not to exceed the amount of fifteen percent (15%) of all sums due and payable hereunder and under any other Loan Documents, costs and expenses incurred by Grantee in any suit, action, legal proceedings or dispute of any kind in which Grantee is made a party or appears as party plaintiff or defendant, affecting the indebtedness, this Security Instrument or the interest created herein, or the Property, including but not limited to the exercise of the power of sale contained in this Security Instrument, any condemnation action involving the Property or any action to protect the security hereof, and any such amounts paid by Grantee shall be added to the Indebtedness and shall be secured by this Security Instrument.

1.11    Estoppel Affidavits. Grantor, upon ten (10) days prior written notice, shall furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the Indebtedness, stating whether or not any offsets or defenses exist against the Indebtedness, or any portion thereof, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.12    Subrogation. To the full extent of the Indebtedness, Grantee is hereby subrogated to the liens, claims and demands, and to the rights of the owners and holders of each and every lien, claim, demand and other encumbrance on the Property which is paid or satisfied, in whole or in part, out of the proceeds of the Indebtedness, and the respective liens, claims, demands and other encumbrances shall be, and each of them is hereby, preserved and shall pass to and be held by Grantee as additional collateral and further security for the Indebtedness, to the same extent as they would have been preserved and would have been passed to and held by Grantee had they been duly and legally assigned, transferred, set over and delivered unto Grantee by assignment, notwithstanding the fact that any instrument providing public notice of the same may be satisfied and cancelled of record.

1.13    Books, Records, Accounts and Annual Reports. Grantor shall keep and maintain or shall cause to be kept and maintained at Grantor's cost and expense and in accordance with generally accepted accounting principles consistently applied, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation thereof. Grantee, by Grantee's agents, accountants and attorneys, employed at Grantee's expense, shall have the right from time to time to examine such books, records and accounts at the office either of the Grantor or of such other person or entity maintaining said books, records and accounts and to make copies or extracts thereof as Grantee shall desire and to discuss Grantor's affairs, finances and accounts with Grantor, at such reasonable times as may be requested by Grantee. Grantor will furnish to Grantee on or before ninety (90) days after the end of each calendar year (or fiscal year with respect to any entity having a different fiscal year), for the preceding calendar year, a balance sheet, profit and loss statement and all supporting schedules covering the operation of the Property, all in reasonable detail, prepared in accordance with generally accepted accounting principles consistently applied and certified by Grantor; and Grantor will furnish to Grantee, at any time within thirty (30) days after demand by Grantee, statements, certified by Grantor, covering such additional financial matters respecting the Property as Grantee may reasonably request, including, without limitation, quarterly operating statements with respect to the Property. In addition, at Grantee's option, Grantee may require that Grantor provide Grantee, at Grantor's expense, a certified audit of the operation of the Property, prepared by an independent certified public accountant satisfactory to Grantee.

1.14    Limit of Validity. If from any circumstances whatsoever, fulfillment of any provision of this Security Instrument, of the Note or of any other Loan Document, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Security Instrument, under the Note or under any other Loan Document that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.

1.15    No Event of Default Affidavits. At Grantee's request, all payments made under the Note or hereunder shall be accompanied by the affidavit of Grantor, dated within five (5) days of the delivery of such payment to Grantee, swearing that the party making such affidavit on behalf of Grantor knows of no Event of Default (as hereinafter defined), nor of any circumstance which after notice or lapse of time or both would constitute an Event of Default, which has occurred and is continuing or, if any such Event of Default has occurred and is continuing, specifying the nature and period of existence thereof and the action Grantor has taken or proposes to take with respect thereto and, except as otherwise specified, stating that Grantor has fulfilled all of Grantor's obligations under this Security Instrument which are required to be fulfilled on or prior to the date of such affidavit.

1.16    Use and Management of Property. The Property shall be used only for leasing activities consistent with those occurring as of the date of this Security Instrument. The Property shall not be used for any illegal purpose or purpose prohibited by this Security Instrument or any other Loan Document.

1.17    Conveyance of Property. Grantor hereby acknowledges to Grantee that (i) the identity and expertise of Grantor were and continue to be material circumstances upon which Grantee has relied in connection with, and which constitute valuable consideration to Grantee for, the extending to Grantor of the indebtedness evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Grantee by this Security Instrument. Grantor therefore covenants and agrees with Grantee, as part of the consideration for the extending to Grantor of the indebtedness evidenced by the Note, that Grantor, shall not encumber, pledge, convey, transfer or assign any or all of its interest in the Property without the prior written consent of Grantee. Grantor also covenants that, without first obtaining the written consent of Grantee, no legal or beneficial interest in Grantor shall be transferred, sold, conveyed, assigned or encumbered.

1.18    Acquisition of Collateral. Grantor shall not acquire any portion of the personal property covered by this Security Instrument subject to any security interest, conditional sales contract, title retention arrangement or other charge or lien taking precedence over the security title and lien of this Security Instrument.

1.19    Environmental Matters.

(a)    Hazardous Waste. At its sole cost and expense, Grantor shall comply with all federal, state and local laws, rules, regulations and orders with respect to the discharge, generation, removal, transportation, storage and handling of hazardous or toxic wastes or substances, pay immediately when due the cost of removal of any such wastes or substances, and keep the Property free of any lien imposed pursuant to such laws, rules, regulations and orders. In addition, Grantor hereby grants to Grantee and its employees and agents an irrevocable and non-exclusive license to enter the Property to inspect, conduct tests and to remove any hazardous wastes or substances. The costs of such inspection, testing and removal shall immediately become due to Grantee and shall be secured by this Security Instrument. Grantor shall indemnify Grantee and hold Grantee harmless from and against all loss, liability, damage, claim, judgment, cost and expense (including, without limitation, attorneys' fees in the amount of fifteen percent (15%) of all sums due and payable hereunder and under any other Loan Documents, other costs incurred in the investigation, defense and settlement of claims) that Grantee may incur as a result of or in connection with the assertion against Grantee of any claim relating to the presence or removal of any hazardous waste or substance referred to in this subparagraph 1.19(a), or compliance with the federal, state or local laws, rules, regulations or orders relating thereto. In addition, Grantee may, at its sole option and in order to assure Grantee of the absence of any hazardous waste, require Grantor to obtain an environmental audit or assessment report of the Property, at Grantor's expense, which audit or report shall be performed by an environmental consultant or engineer acceptable to Grantee and which shall be further satisfactory to Grantee in all respects.

(b)    Asbestos. Grantor shall not install or permit to be installed on the Property friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. With respect to any such material currently present on the Property, if any, Grantor shall promptly comply with such federal, state or local laws, rules, regulations or orders, at Grantor's expense. In addition, Grantor hereby grants Grantee and its employees and agents an irrevocable and non-exclusive license to enter the Property to inspect, conduct tests and to remove friable asbestos or any substances containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. The cost of such inspection, testing and removal shall immediately become due to Grantee and shall be secured by this Security Instrument. Grantor shall indemnify Grantee and hold Grantee harmless from and against all loss, liability, damage, claim, judgment, cost and expense (including, without limitation, attorneys' fees in the amount of fifteen percent (15%) of all sums due and payable hereunder and under any other Loan Documents, and other costs incurred in the investigation, defense and settlement of claims) that Grantee may incur as a result of or in connection with the assertion against Grantee of any claim relating to the presence or removal of any asbestos substance referred to in this subparagraph 1.19(b), or compliance with any federal, state or local laws, rules, regulations or orders relating thereto.

## ARTICLE II

2.01    Default. The terms "Event of Default" or "Events of Default", wherever used in this Security Instrument, shall mean any one or more of the following events:

(a)    Failure by Grantor to pay as and when due and payable any portion of the Indebtedness; or

(b)    Failure by Grantor duly to observe or perform any other term, covenant, condition or agreement of this Security Instrument; or

(c)    The occurrence of an "Event of Default" under the Loan Agreement; or

Page 8 of 20
Deed to Secure Debt and Assignment of Rents Rider

(d)      Failure by Grantor duly to observe or perform any term, covenant, condition or agreement in any other Loan Document or other agreement now or hereafter evidencing, securing or otherwise relating to the Note, this Security Instrument or the Indebtedness; or

(e)      Any warranty of Grantor contained in this Security Instrument, the Loan Agreement, any other Loan Document or any other agreement now or hereafter evidencing or securing or otherwise relating to the Note or this Security Instrument or the Indebtedness, proves to be untrue or misleading in any material respect; or

(f)      The occurrence of any "Event of Default" or "Default" under any other document evidencing, securing or relating to indebtedness owed by Grantor to Grantee.

(g)      The filing by Grantor or any endorser or guarantor of the Note of a voluntary petition in bankruptcy or the filing by Grantor or any such endorser or guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or Grantor's or any such endorser's or guarantor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Grantor, such endorser or guarantor, or of all or any substantial part of the Property or of any other property or assets of Grantor, such endorser or guarantor, or of any or all of the income, rents, issues, profits or revenues thereof, or the making by Grantor, or any such endorser or guarantor, of any general assignment for the benefit of creditors, or the admission in writing by Grantor, or by any such endorser or guarantor, of its inability to pay its debts generally as they become due or the commission by Grantor or any such endorser or guarantor of any act of bankruptcy; or

(h)      The filing of a petition against Grantor, or any endorser or guarantor of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of Grantor, or of any such endorser or guarantor or of all or any substantial part of the Property or of any or all of the income, rents, issues, profits or revenues thereof unless such petition shall be dismissed within thirty (30) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

(i)      The Property are subjected to actual or threatened waste, or any part thereof is removed, demolished or altered without the prior written consent of Grantee; or

(j)      Grantor or any endorser or guarantor of the Note (if a corporation, limited liability company or other organized limited liability entity) is liquidated or dissolved or its charter or document of organization expires or is revoked, or Grantor or such endorser or guarantor (if a partnership or other non-organized business association) is dissolved or partitioned, or Grantor or such endorser or guarantor (if a trust) is terminated or expires, or Grantor or such endorser or guarantor (if an individual) dies; or

(k)      Grantor shall have sold, conveyed, alienated, or further encumbered the Property or any part thereof or any interest therein, or shall have been divested of Grantor's title or interest therein in any manner or way, whether voluntarily or involuntarily.

(l)      Grantee believes at anytime that the prospect of payment or performance of any of the Indebtedness is impaired.

2.02      Acceleration of Maturity.  If an Event of Default shall have occurred, then the entire Indebtedness shall, at the option of Grantee, immediately become due and payable without notice or demand, time being of the essence of this Security Instrument; and no omission on the part of Grantee to exercise such option when entitled to do so shall be construed as a waiver of such right.

2.03      Right to Enter and Take Possession.

(a)      If an Event of Default shall have occurred, Grantor, upon demand by Grantee, shall forthwith surrender to Grantee the actual possession of the Property and if, and to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Property without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b)      If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee, and Grantor hereby specifically covenants and agrees that Grantor will not

BK09559PG685

oppose, contest or otherwise hinder or delay Grantee in any action or proceeding by Grantee to obtain such judgment or decree. Grantor will pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Security Instrument.

(c)     Upon every such entering upon or taking of possession, Grantee may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise act with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted to Grantee, all as Grantee from time to time may determine to be in its best interest. Grantee may collect and receive all the income, rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and Grantee may apply any monies and proceeds received by Grantee, in whatever order or priority Grantee in its sole discretion may determine, to the payment of (i) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (ii) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (iii) the cost of such insurance; (iv) such taxes, assessments and other similar charges as Grantee may at its option pay; (v) other proper charges upon the Property or any part thereof; (vi) the compensation, expenses and disbursements of the attorneys and agents of Grantee; (vii) accrued interest; (viii) deposits required in Paragraph 1.04 and other sums required to be paid under this Security Instrument; or (ix) overdue installments of principal. Anything in this Paragraph 2.03 to the contrary notwithstanding, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as the result of any exercise by Grantee of its rights under this Security Instrument, and Grantee shall be liable to account only for the rents, incomes, issues, profits and revenues actually received by Grantee.

(d)     In the event that all such interest, deposits and principal installments and other sums due under any of the terms, covenants, conditions and agreements of this Security Instrument shall be paid and all Events of Default shall be cured, and as a result thereof Grantee surrenders possession of the Property to Grantor, the same right of taking possession shall continue to exist if any subsequent Event of Default shall occur.

2.04    Performance by Grantee. If an Event of Default shall occur with respect to the payment, performance or observance of any term, covenant or condition of this Security Instrument, Grantee may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate provided in the Note. Grantee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Grantor or any person in possession holding under Grantor.

2.05    Receiver. If an Event of Default shall have occurred, Grantee, upon application to a court of competent jurisdiction, shall be entitled as matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the incomes, rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor will pay to Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05, and any such amounts paid by Grantee shall be added to the Indebtedness and shall be secured by this Security Instrument.

2.06    Enforcement.

(a)     If an Event of Default shall have occurred, Grantee, at its option, may sell the Property or any part of the Property at one or more public sale or sales before the door of the courthouse of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including attorneys' fees in the amount of fifteen percent (15%) of all sums due and payable hereunder and under any other Loan Documents, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title and to this end Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title and equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as

Page 10 of 20
Deed to Secure Debt and Assignment of Rents Rider

cumulative of the other remedies provided hereby or by law for collection of the Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Indebtedness. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code as enacted in the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property are sold or the Indebtedness is paid in full. If the Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments or leases or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)      If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under Subparagraph 2.06(a), either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note and the other Indebtedness or the performance of any term, covenant, condition or agreement of this Security Instrument or any other right and (ii) to pursue any other remedy available to it, all as Grantee at its sole discretion shall elect.

2.07    Purchase by Grantee. Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property or any part thereof and shall be entitled to apply all or any part of the Indebtedness as credit to the purchase price.

2.08    Application of Proceeds of Sale. In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' fees, to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Grantee, to payment of the outstanding principal balance of the Indebtedness, or to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

2.09    Grantor as Tenant Holding Over. In the event of any such foreclosure sale or sales under the power herein granted, Grantor shall be deemed a tenant at sufferance and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants at sufferance.

2.10    Waiver of Appraisement, Valuation, etc. Grantor agrees, to the full extent permitted by law, that in case of the occurrence of an Event of Default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under Grantor will set up, claim or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, valuation, stay, extension, homestead exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Security Instrument, or the absolute sale of the Property, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets subject to the security interest of this Security Instrument marshaled upon the foreclosure or sale under the power herein granted.

2.11    Waiver of Homestead. Grantor hereby waives and renounces all homestead and exemption rights, provided for by the Constitution and the laws of the United States and of any state thereof, in and to the Property as against the collection of the Indebtedness, or any part thereof.

2.12    Leases. Grantee, at its option, is authorized to foreclose this Security Instrument subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Grantee to collect the Indebtedness.

2.13    Discontinuance of Proceedings. In case Grantee shall have proceeded to enforce any right, power or remedy under this Security Instrument by foreclosure, entry or otherwise or in the event that Grantee commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, or shall have been determined adversely to Grantee, then in every such case (i) Grantor and Grantee shall be restored to their former position and rights, (ii) all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken, (iii) each and every Event of Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall and shall be deemed to be a continuing Event of Default, and (iv) neither this Security Instrument, nor the Note, nor the other Indebtedness, nor any other instrument concerned therewith, shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; Grantor hereby expressly waives, to the extent permitted by applicable law, the benefit of any statute or rule of law now provided, or which may hereinafter be provided, which would produce a result contrary to or in conflict with the above.

Page 11 of 20
Deed to Secure Debt and Assignment of Rents Rider

2.14    Remedies Cumulative.  No right, power or remedy conferred upon or reserved to Grantee by this Security Instrument is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy and hereunder or now or hereafter existing at law, in equity or by statute.

2.15    Waiver.

(a)    No delay or omission by Grantee or by any holder of the Note to exercise any right, power or remedy accruing upon any breach or Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such breach or Event of Default, or acquiescence therein, and every right, power and remedy given by this Security Instrument to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee.  No consent or waiver, expressed or implied, by Grantee to or of any breach or Event of Default by Grantor in the performance of the obligations of Grantor hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Event of Default resulting in a default in the performance of the same or any other obligations of Grantor hereunder.  Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies of Grantee hereunder.

(b)    No act or omission by Grantee shall release, discharge, modify, change or otherwise affect the original liability under the Note, the other Indebtedness, this Security Instrument or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor, or preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default, or alter the security title, security interest or lien of this Security Instrument except as expressly provided in an instrument or instruments executed by Grantee.  Without limiting the generality of the foregoing, Grantee may (i) grant forbearance or an extension of time for the payment of all or any portion of the Indebtedness; (ii) take other or additional security for the payment of the Indebtedness; (iii) waive or fail to exercise any right granted hereunder or in the Note or in any other instrument or document evidencing, securing or relating to the Indebtedness; (iv) release any part of the Property from the security interest or lien of this Security Instrument or otherwise change any of the terms, covenants, conditions or agreements of the Note or this Security Instrument; (v) consent to the filing of any map, plat or replat affecting the Property; (vi) consent to the granting of any easement or other right affecting the Property; (vii) make or consent to any agreement subordinating the security title, security interest or lien hereof; or (viii) take or omit to take any action whatsoever with respect to the Note, this Security Instrument, the Property or any document or instrument evidencing, securing or in any way relating to the Indebtedness, all without releasing, discharging, modifying, changing or affecting any such liability, or precluding or affecting the security title, security interest or lien of this Security Instrument.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing and/or discharging any liabilities, obligations or undertakings.

2.16    Suits to Protect the Property.  Grantee shall have the power to institute and maintain such suits and proceedings as it may deem expedient (i) to prevent any impairment of the Property by any acts which may be unlawful or constitute an Event of Default under this Security Instrument, (ii) to preserve or protect its interest in the Property and in the incomes, rents, issues, profits and revenues arising therefrom and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereof or be prejudicial to the interest of Grantee.

2.17    Proofs of Claim.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount of the Indebtedness at the date of the institution of such proceedings and for any additional amount of the Indebtedness after such date.

2.18    Waiver of Grantor's Rights.  BY EXECUTION OF THIS SECURITY INSTRUMENT, GRANTOR, TO THE FULLEST EXTENT PERMITTED BY LAW, EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS

Page 12 of 20
Deed to Secure Debt and Assignment of Rents Rider

PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT GRANTOR HAS READ THIS SECURITY INSTRUMENT AND ANY AND ALL QUESTIONS OF GRANTOR REGARDING THE LEGAL EFFECT OF THIS SECURITY INSTRUMENT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND THAT GRANTOR HAS CONSULTED WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS SECURITY INSTRUMENT; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY INSTRUMENT IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

## ARTICLE III

3.01    Successors and Assigns. This Security Instrument shall inure to the benefit of and be binding upon Grantor and Grantee and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns. Whenever a reference is made in this Security Instrument to "Grantor" or "Grantee" such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors, successors-in-title and assigns of Grantor and Grantee, as the case may be. The provisions of this Paragraph 3.01 are subject to the restrictions on transfer contained in Paragraph 1.17.

3.02    Terminology. All personal pronouns used in this Security Instrument whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles of Articles and Paragraphs are for convenience only and neither limit or amplify the provisions of this Security Instrument, and all references herein to Articles, Paragraphs or subparagraphs shall refer to the corresponding Articles, Paragraphs or subparagraphs of this Security Instrument unless specific reference is made to Articles, Paragraphs or subparagraphs or another document or instrument. The term "Property" shall be construed as if followed by the phrase (if not actually inserted herein) "or any part thereof". The terms "include", "including" and similar terms shall be construed as if followed by the phrase (if not actually inserted herein) "without being limited to". The term "person" shall include natural persons, firms, partnerships, corporations, and any other public or private entities. The term "lease" shall include "usufruct". Words of masculine, feminine and neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number and vice versa. No inference or presumption in favor of any party shall be drawn from the fact that such party has drafted any portion hereof.

3.03    Severability. If any provisions of this Security Instrument or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Security Instrument and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04    Applicable Law. This Security Instrument shall be interpreted, construed and enforced according to the laws of the State of Georgia.

3.05    Notices. Unless and/or except as otherwise may be provided herein, all notices, requests and demands to or upon a party hereto to be effective shall be in writing. Notices in writing shall be delivered personally or sent by certified or registered mail postage pre-paid or by facsimile and shall be deemed received in the case of personal delivery, when delivered, in the case of mailing, on the third (3rd) day after mailing, and, in the case of facsimile on the day after transmittal, provided that the notice must be sent to the facsimile number set forth below and its receipt must be followed by (i) a copy of the notice deposited in certified mail or registered mail, postage prepaid within twenty-four (24) hours of transmission, and (ii) a copy of the confirmation of receipt of such facsimile notice, addressed as follows:

| If to Grantor: | XUYEN NGUYEN and HANG N. NHAN<br>5403 JONESBORO ROAD<br>LAKE CITY, GA 30260 |
|---|---|
| If to Lender: | UNITED AMERICAS BANK NA<br>Attn: Peter Cao<br>3789 ROSWELL ROAD<br>ATLANTA, GA 30342 |

Page 13 of 20
Deed to Secure Debt and Assignment of Rents Rider

With a copy to:      REDMOND LAW, LLC.
Attn:    MACHELLE L. REDMOND, ESQ.
3575 PIEDMONT ROAD, STE 1020
ATLANTA, GA 30305

or to such other address as each party may designate for itself by like notice given in accordance with the provisions of this Security Instrument. Notice by a party shall be deemed effectively given when provided by the party's legal counsel.

3.06     Replacement of Note. Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction, total or partial obliteration, mutilation or inappropriate cancellation of the Note, or the placement of any inappropriate marking upon the Note, and in the case of any such loss, theft, destruction or total obliteration, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such partial obliteration, mutilation, inappropriate cancellation or inappropriate marking, upon surrendering and cancellation of the Note, Grantor will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note, and upon such execution and delivery all references in this Security Instrument to the Note shall be deemed to refer to such replacement Note. Any such replacement shall not be deemed a novation.

3.07     Time of the Essence. Time is of the essence with respect to each and every covenant, agreement and obligation of Grantor under this Security Instrument, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

3.08     Assignment. This Security Instrument is assignable by Grantee, and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

3.09     Exhibits and/or Schedules. Each and every exhibit and/or schedule referred to or otherwise mentioned in this Security Instrument is attached hereto and is and shall be construed to be made a part of this Security Instrument or by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each exhibit and/or schedule were set forth in full and at length every time it is referred to or otherwise mentioned.

3.10     Advice of Counsel. Grantor hereby represents to Grantee that Grantor has either (i) discussed this Security Instrument and the covenants, conditions and agreements contained herein with its counsel, or (ii) has had sufficient opportunity to discuss this Security Instrument and the covenants, conditions and agreements and has knowingly and intentionally elected to forego and decline any discussion of this Security Instrument and the covenants, conditions and agreements contained herein with its counsel.

3.11.     No Strict Construction. The parties hereto have participated jointly in the negotiation and/or drafting of this Security Instrument. In the event an ambiguity or question of intent or interpretation arises with respect to this Security Instrument, this Security Instrument shall be construed as if drafted jointly by the Grantor and Grantee and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Security Instrument.

*(remainder of page intentionally left blank)*

*(signature page to this Deed to Secure Debt and Assignment of Rents contained in following page)*

BK09559PG690

Page 14 of 20
Deed to Secure Debt and Assignment of Rents Rider

09559
00691

*(signature page to this Deed to Secure Debt and Assignment of Rents)*

IN WITNESS WHEREOF, Grantor has executed this Security Instrument, or has caused this Security Instrument to be executed by its duly authorized representative(s), on the day and year first above written, with the intention that this Security Instrument is to take effect as an instrument under seal.

**GRANTOR:**

Signed, sealed and delivered as of this
13th day of November, 2008.

_____
Unofficial Witness

_____
Notary Public
(NOTARY SEAL)

_____
XUYEN NGUYEN

_____
HANG N. NHAN

_____

_____

Page 15 of 20
Deed to Secure Debt and Assignment of Rents Rider

BK 09559 PG 691

09559
00692

## ASSIGNMENT OF LEASES AND RENTS RIDER

THIS ASSIGNMENT OF LEASES AND RENTS (this "Assignment") is made and entered into as of this 13th day of November, 2008 by and between XUYEN NGUYEN and HANG N. NHAN whose address is 5403 JONESBORO ROAD, LAKE CITY, GA 30260 (hereinafter referred to as "Borrower"), and UNITED AMERICAS BANK NA, party of the second part, as grantee (hereinafter, together with its successors and assigns, referred to as "Lender"), whose address is 3789 ROSWELL ROAD, ATLANTA, GA 30342.

### WITNESSETH:

Lender has agreed to make a loan to Borrower in the principal sum of up to Two Hundred Fifty Thousand and 00/100 ($250,000.00) in lawful money of the United States of America (the "Loan"), which Loan will be advanced pursuant to that certain Loan Agreement of even date herewith between Borrower and Lender (as the same might hereafter be extended, modified, consolidated, restated, the "Loan Agreement") and is evidenced by a UNITED AMERICAS BANK NA Real Estate Note of even date herewith payable by Borrower to the order of Lender in said principal amount (as the same might hereafter be extended, renewed, modified, consolidated, substituted, replaced, restated, or increased, the "Note"). The Loan is secured in part by a Deed To Secure Debt, Assignment of Rents and Security Agreement of even date herewith from Borrower to Lender (as the same might hereafter be amended, supplemented, or restated, the "Security Instrument") encumbering the real property more particularly described in EXHIBIT "A" attached hereto and the improvements located thereon (collectively, the "Property"). This Assignment, the Note, the Security Instrument, and all such other documents now or hereafter evidencing, securing, or otherwise relating to the Loan, together with all extensions, modifications, replacements, renewals or amendments thereof, are collectively referred to herein as the "Loan Documents."

To induce Lender to make the Loan, Borrower has agreed to execute and deliver this Assignment as additional security for the payment of the Loan and the payment and performance of all obligations of Borrower under this Assignment, the Note, the Security Instrument, and the other Loan Documents (collectively, the "Obligations").

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as an inducement to Lender to make the Loan to Borrower, Borrower hereby agrees with Lender, and represents and warrants to Lender, as follows:

1.      As security for the payment of the Loan and the payment and performance of the Obligations, Borrower hereby sells, assigns, transfers, and sets over unto Lender, its successors and assigns, for so long as all of Borrower's interest in and to all leases presently existing or hereafter made, whether written or verbal, or any letting of, or agreement for the use or occupancy of, any part of the Property, as any such leases or agreements might hereafter be amended, extended, renewed, or supplemented with the consent of Lender as herein provided (collectively, the "Leases"), together with all rights, powers, privileges, options and other benefits of Borrower under the Leases, including, without limitation, the immediate and continuing right to make claim for, receive and collect (and to apply the same to the payment of the Obligations) all rents (including all basic rent and additional rent), income, revenues, issues, profits, moneys, security deposits, and damages payable to or receivable by Borrower under the Leases or pursuant to any of the provisions thereof (such rents, income, revenues, issues, profits, moneys, security deposits or damages, collectively, the "Rents"), and the right of Borrower to enforce any guaranty of the Lease at any time existing.

2.      Although it is the intention of Borrower and Lender that this Assignment constitutes a present and absolute assignment of the Leases and Rents to Lender, Lender grants to Borrower a license to collect the Rents upon, but not prior to, their accrual under any Leases, and to retain, use, and enjoy the Rents so collected unless and until the occurrence of any Event of Default pursuant to, and as defined in, the Loan Documents or until the violation of any term, condition, or agreement of this Assignment which remains uncured for more than thirty (30) days after written notice from to Lender to Borrower specifying such violation, each of which shall constitute an "Event of Default" hereunder.

3.      Upon and during the continuance of an Event of Default, the license granted to Borrower herein to collect the Rents will automatically terminate without notice, and Lender may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Obligations, either in person or by agent or servicer, with or without bringing any action or proceeding, or by a receiver appointed by a court, enforce its interest in the Leases and Rents and take possession of the Property and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper, and either with or without taking possession of the Property, in its own name, demand, sue for or otherwise collect and receive all Rents that are currently due or past due and unpaid. Borrower hereby authorizes and directs the lessees under all Leases, upon

Page 16 of 20
Deed to Secure Debt and Assignment of Rents Rider

notice from Lender of the occurrence of an Event of Default hereunder, to pay to Lender all Rents as the same become due. Any lessee making such payment to Lender will be under no obligation to inquire into or determine the actual existence of any Event of Default claimed by Lender. Any Rents received or collected by Lender by virtue of this Assignment will be applied to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding:

(a)    all reasonable and necessary expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements permitted under the Lease, and all expenses incident to taking and retaining possession of the Property; and

(b)    the Obligations, together with all costs and reasonable attorneys' fees actually incurred.

In addition to the rights which Lender may have herein, upon the occurrence and during the continuation of an Event of Default, Lender, at its option, may either require Borrower to pay monthly in advance to Lender or the designee of Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be in possession of Borrower or may require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise. For purposes of this paragraph, Borrower grants to Lender and the designee of Lender its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Lender for the proper management and preservation of the Property, which power of attorney Lender agrees not to exercise unless and until the occurrence and during the continuation of an Event of Default. The exercise by Lender of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Loan Agreement, the Note, the Security Instrument, the Leases, this Assignment, or any of the other Loan Documents.

4.    Borrower agrees to duly operate and maintain the Property and perform all requisites on its part to keep any and all Leases in full force and effect. Borrower will not assign the Leases or the Rents, or any part thereof, to any other person, nor collect Rents under any Leases for a period further in advance than one (1) month without the written consent of Lender, nor do any other act whereby this Assignment may, in the opinion of Lender, be impaired in value or quality. Borrower represents that it has not, and agrees that it will not, enter into any fictitious lease or any lease for the purpose of avoiding creditors, and any attempt to do so will be void. Borrower represents and warrants that all Leases presently in effect are, and all Leases hereafter entered into will be, arms-length leases for a rental rate that, in Borrower's best judgment, represents a fair market rental. Borrower agrees that it shall not declare a default or exercise any claims, rights, or remedies under the Leases, or terminate, modify, amend, waive, or accept a surrender of, or offer or agree to any termination, modification, consent, amendment, waiver or surrender of, or give or withhold any consent with respect to, exercise any right or option or take any other action required or contemplated by, the Leases or any term or provision thereof without the prior written consent of Lender.

5.    Borrower hereby agrees to indemnify Lender for, and to save it harmless from, any and all liability, loss, or damage that Lender might incur under any Leases or by virtue of this Assignment as a result of any act, or failure to act, and from any and all claims and demands whatsoever that might be asserted against Lender thereunder or hereunder, other than claims arising from the grossly negligent or intentional acts of Lender. Without limiting the generality of the foregoing, Borrower covenants that this Assignment will not operate to place responsibility for the control, care, management, or repair of the Property upon Lender, nor the carrying out of any of the terms and conditions of any Lease, nor will this Assignment operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other party, or for any negligence (other than the gross negligence of Lender) in the management, upkeep, repair, or control of the Property resulting in loss or injury or death to any tenant, licensee, invitee, employee, stranger, or other person.

6.    This Assignment will remain in full force and effect so long as any of the Obligations remain unpaid.

*(remainder of page intentionally left blank)*

*(signature page to this Assignment of Rents Rider contained in following page)*

Page 17 of 20
Deed to Secure Debt and Assignment of Rents Rider

BK09559PG693

*(signature page to this Assignment of Rents Rider)*

IN WITNESS WHEREOF, Borrower has executed this Assignment, or has caused this Assignment to be executed by its duly authorized representative, on the day and year first above written, with the intention that this Assignment is to take effect as an instrument under seal.

**BORROWER:**

Signed, sealed and delivered as of this
13th day of November, 2008.

Unofficial Witness

Notary Public
(NOTARY SEAL)

XUYEN NGUYEN

HANG N. NHAN

Page 18 of 20
Deed to Secure Debt and Assignment of Rents Rider

EXHIBIT "A"

Legal Description

All that tract or parcel of land lying and being in Land Lot 177 of the 12h District of Clayton County, Georgia, and being more particularly described as follows:

Beginning at a point on the northeasterly side of State Highway Number 54, 515.2 feet southeasterly from the Southeasterly intersection of the New Morrow Road and State Highway Number 54, (as said street lines are now located) which point is the corner of the property now or formerly owned by E. B. Gallaway: running thence along the line of said Gallaway property 200 feet to an iron pin; thence southeasterly parallel to said State Highway Number 54, 92.5 feet to an iron pin; thence southwesterly 200 feet to an iron pin located on the northeasterly side of State Highway Number 54; thence northwesterly along the right of way of said State Highway Number 54, 92.5 feet to an iron pin and the point of beginning.

5304 Main Street, (Hwy 54) Lake City, Georgia 30260 Parcel No: 12177C D007

All that tract or parcel of land lying and being in Land Lot 177 of the 12th District of Clayton County, Georgia, and being more particularly described as follows:

Commencing at northeast intersection of unnamed Street and fifty-four (54) Highway and running thence Northerly along East right of way line of said Highway No. 54 a distance of 92.5 feet to other property of Joyce Petriello herein; thence Easterly with South line of other property of Joyce Petriello a distance of 200 feet to property now or formerly owned by Oscar L. Neundorfer, Jr.; thence Southerly direction with West line of Neundorfer property a distance of 92.5 feet to the North side of said unnamed street, thence Westerly along North side of said unnamed street a distance of 200 feet to the point of beginning.

Said property being the same as described in Deed Book 154, Page 505.

5312 Main Street, (Hwy 54) Lake City, Georgia 30260 Parcel No. 12177C D008

EXHIBIT "B"

Permitted Exceptions

NONE

Page 20 of 20
Deed to Secure Debt and Assignment of Rents Rider

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>THUONG NGOC NHAN and<br>XUYEN THI NGUYEN,<br><br>Debtors.<br>------------------------------------------------------------<br><br>STATE BANK AND TRUST,<br><br>Movant,<br>v.<br><br>THUONG NGOC NHAN, XUYEN THI<br>NGUYEN, and JANET G. WATTS,<br>Chapter 7 Trustee,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CHAPTER 7<br><br>CASE NO.: 13-59273-mhm<br><br><br><br>CONTESTED MATTER |

## CERTIFICATE OF SERVICE

This is to certify that the foregoing *Motion for Relief from the Automatic Stay* and *Notice of Hearing* was served by depositing a copy of same in the United States mail, with adequate first-class postage affixed thereto, to the parties below:

| | | |
|---|---|---|
| Thuong Ngoc Nhan<br>Xuyen Thi Nguyen<br>5344 Orchard Place<br>Lake City, Georgia 30260 | Paul Reece Marr<br>Paul Reece Marr, P.C.<br>300 Galleria Parkway, N.W.<br>Suite 960<br>Atlanta, Georgia 30339<br>Counsel for Debtor | Janet G. Watts<br>Chapter 7 Trustee<br>600 North Glynn Street<br>Suite C<br>Fayetteville, Georgia 30214 |

This 14th day of May, 2013.

BUSCH, SLIPAKOFF & SCHUH, LLP

/s/ Mathew A. Schuh
Mathew A. Schuh
Georgia Bar No. 630253